[659 NYS2d 515]

In the Matter of JOHN S. TAMAGNI et al., Petitioners, v TAX APPEALS TRIBUNAL OF THE STATE OF NEW YORK et al., Respondents.

Third Department, June 19, 1997

418

APPEARANCES OF COUNSEL

*McDermott, Will & Emery*, New York City (*Arthur R. Rosen* and *Diann L. Smith* of counsel), for petitioners.

*Dennis C. Vacco, Attorney-General*, Albany (*Daniel Smirlock* and *Nancy A. Spiegel* of counsel), for Commissioner of Taxation and Finance of the State of New York, Respondent.

OPINION OF THE COURT

CASEY, J.

■ Under New York's personal income tax statute, individuals who are not domiciled in New York but who nevertheless maintain a "permanent place of abode" and spend more than 183 days in New York are considered "statutory residents" (Tax Law § 605 [b] [1] [B]) and, as resident individuals, are liable for State income tax on all of their income regardless of its source (Tax Law §§ 611, 612). Petitioner John S. Tamagni is an investment banker and he has worked for Lazard Freres in its main office in New York City for 21 years. Although during the years at issue petitioners were domiciliaries of New Jersey,

they also owned a cooperative apartment in New York City. Pursuant to a field audit, the Department of Taxation and Finance issued a notice of deficiency to petitioners indicating that they owed additional personal income taxes for the 1987, 1988 and 1989 tax years as a result of their improper filing as nonresidents of New York State and New York City. The basis of the additional State and City tax assessments was the Department's conclusion that petitioners were residents of New York State and New York City pursuant to Tax Law § 605 (b) (1) (B) and Administrative Code of the City of NY § 11-1705 (b).[1]

A hearing was thereafter held after which an Administrative Law Judge (hereinafter ALJ) concluded, *inter alia*, that petitioners were present for more than 183 days in both New York State and New York City in 1988 and in only New York State in 1989. The ALJ declined to consider petitioners' claims that the definition of residency in Tax Law § 605 (b) (1) (B) violated the Federal and State Constitutions, finding that he lacked jurisdiction to do so.

Upon administrative appeal, respondent Tax Appeals Tribunal affirmed the ALJ's determination with regard to the number of days spent in New York City and New York State in the years in question. The Tribunal, unlike the ALJ, addressed the constitutional issues raised by petitioners. The Tribunal first rejected petitioners' claim that their susceptibility to both New York and New Jersey income tax for their income from intangibles violates the Commerce Clause of the US Constitution. It also held that petitioners failed to demonstrate that treating them as New York residents for income tax purposes violated NY Constitution, article XVI, § 3. Petitioners thereafter commenced this CPLR article 78 proceeding challenging the constitutionality of the taxing statute on these various grounds.[2]

■ Initially we find, contrary to petitioners' contention, that the Commerce Clause is not implicated here. The Commerce Clause authorizes Congress "[t]o regulate Commerce * * *

---

1. The definition of "resident" in Administrative Code of the City of NY § 11-1705 (b) is identical to that provided in Tax Law § 605 (b) (1) (B) except for the substitution of the term "city" for "state".

2. [1] We initially note that "a CPLR article 78 proceeding is not the proper vehicle for challenging the constitutionality of a statute" (*Matter of Capital Fin. Corp. v Commissioner of Taxation & Fin.*, 218 AD2d 230, 232, *appeal dismissed* 88 NY2d 874, *lv denied* 88 NY2d 811). We therefore convert that portion of this matter seeking such relief into an action for declaratory judgment (*see*, CPLR 103 [c]).

among the several States" (US Const, art I, § 8, cl 3) and includes a "negative" component that prevents the states from interfering unduly with interstate commerce (*Associated Indus. v Lohman*, 511 US 641, 646). It is only when "the regulated activity 'substantially affects' interstate commerce" that the Commerce Clause is implicated (*United States v Lopez*, 514 US 549, —, 115 S Ct 1624, 1630). Interstate commerce is defined as "[t]raffic, intercourse, commercial trading, or the transportation of persons or property between or among the several states of the Union" (Black's Law Dictionary 819 [6th ed 1990]; *see*, 20 NYCRR 528.9 [a] [5]).

Unlike the business of transporting individuals between States (*see, e.g., Oklahoma Tax Commn. v Jefferson Lines*, 514 US 175, 185), the practice of commuting from one State to work in another does not produce the requisite effect on commerce. We also reject petitioners' claim that maintaining a residence and spending time in New York—purchasing utilities, acquiring items of service, utilizing banking facilities and frequenting restaurants and retail establishments—necessarily involves interstate commerce. To take this argument to its logical conclusion would mean that all New York domiciliaries, not just statutory residents like petitioners, are engaging in interstate commerce simply by being involved in these daily activities, a conclusion we decline to accept. Petitioners' attempt to identify interstate commerce with the constitutional right to interstate travel is also unavailing. First, the United States Supreme Court has concluded that negative Commerce Clause cases are "irrelevant to the individual right of interstate travel" (*Bray v Alexandria Women's Health Clinic*, 506 US 263, 277, n 7). Furthermore, "[t]he federal guarantee of interstate travel * * * protects interstate travelers against two sets of burdens: 'the erection of actual barriers to interstate movement' and 'being treated differently' from intrastate travelers" (*supra*, at 276-277, quoting *Zobel v Williams*, 457 US 55, 60, n 6). We find neither burden to be implicated here.

■ Having so concluded, petitioners' only remaining argument is that New York's imposition of its personal income tax on income from intangibles violates NY Constitution, article XVI, § 3. Petitioners claim that, based on the language and legislative history of the statute, domicile is the controlling factor for determining the taxability of intangibles and the income therefrom, and that for ad valorem tax purposes intangibles were not to be taxed at all. Petitioners claim that,

in light of these contentions, New York may not constitutionally apply its personal income tax to taxpayers who are not domiciliaries and whose intangibles are not employed in business in New York. We disagree.

Contrary to petitioners' contention, it does not follow from the first sentence of this statute, which provides that the situs of intangibles is "located at the domicile of the owner for purposes of taxation" (NY Const, art XVI, § 3), that the income from intangibles owned by a nondomiciliary resident cannot be taxed in New York. Nor does the legislative history support this conclusion (*see, Ampco Print.—Advertisers' Offset Corp. v City of New York*, 14 NY2d 11, 22-23, *appeal dismissed* 379 US 5). Furthermore, petitioners were not taxed on the ownership of intangibles located in New York nor were their intangibles taxed on an ad valorem basis. Rather, they were taxed based on the income generated by those intangibles, which does not offend the State Constitution. Consequently, petitioners' arguments in this regard must fail.

CARDONA, P. J., WHITE, SPAIN and CARPINELLO, JJ., concur.

Adjudged that the determination is confirmed, without costs, proceeding partially converted to an action for declaratory judgment and it is declared that Tax Law § 605 (b) (1) (B) has not been shown to be unconstitutional.